UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

DAMIEN C. DOUCET                    CIVIL ACTION NO. 6:19-cv-00350

VERSUS                              JUDGE SUMMERHAYS

U.S. COMMISSIONER,                  MAGISTRATE JUDGE HANNA
SOCIAL SECURITY
ADMINISTRATION

## REPORT AND RECOMMENDATION

Before the Court is an appeal of the Commissioner's finding of nondisability. Considering the administrative record, the briefs of the parties, and the applicable law, and for the reasons fully explained below, it is recommended that the Commissioner's decision be affirmed.

## Administrative Proceedings

The claimant, Damien C. Doucet, fully exhausted his administrative remedies before filing this action. He filed an application for disability insurance benefits ("DIB") and an application for supplemental security income benefits ("SSI"), alleging disability beginning on December 31, 2014.[1] His application for DIB was denied.[2] He then requested a hearing, which was held on September 25, 2017 before

---

[1]    Rec. Doc. 13-1 at 209, 217.

[2]    Rec. Doc. 13-1 at 149.  No disposition of the application for SSI was found in the record.

Administrative Law Judge Janet Akers Hollings.[3]  The ALJ issued a decision on May 2, 2018, concluding that Mr. Doucet was not disabled within the meaning of the Social Security Act from December 31, 2014 through the date of the decision.[4] Mr. Doucet asked the Appeals Council to review the ALJ's decision, but the Appeal Council found no basis for review.[5]  Therefore, the ALJ's decision became the final decision of the Commissioner for the purpose of the Court's review.[6]  Mr. Doucet then initiated this action, seeking review of the Commissioner's decision.  The claimant is proceeding *pro se*.

## Summary of Pertinent Facts

The claimant was born on September 1, 1980,[7] and he was thirty-seven years old at the time of the ALJ's decision.  He graduated from high school,[8] and has relevant work experience as a welder and fabricator and also as a barber.[9]  In his applications for benefits, he alleged that he had been disabled since December 31,

---

[3]    A transcript of the hearing is found in the record at Rec. Doc. 13-1 at 103-147.

[4]    Rec. Doc. 13-1 at 98.

[5]    Rec. Doc. 13-1 at 4.

[6]    *Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005).

[7]    Rec. Doc. 13-1 at 114, 209, 217.

[8]    Rec. Doc. 13-1 at 115.

[9]    Rec. Doc. 13-1 at 116, 240, 249.

2014[10] due to high blood pressure.[11]   At the hearing, however, he stated that he stopped working due to pain in his left shoulder.[12]   He also testified that his only disabling conditions at the time of the hearing were right ankle pain and right shoulder pain.[13]

The claimant was seen in the emergency department at Mercy Regional Medical Center in Ville Platte, Louisiana, on April 20, 2015,[14] complaining of a foot injury.  Despite his pain, he was able to fully bear weight on his right leg and to ambulate effectively.  He also had a full range of motion in his foot and ankle despite tenderness and swelling.  It was noted that his symptoms were, at their worst, mild.  An x-ray showed a nondisplaced fracture of the fourth metatarsal bone.  Mr. Doucet's ankle was wrapped with an Ace bandage and he was diagnosed with a sprain.  He was advised to elevate his foot and to follow up with his family doctor.

On February 29, 2016, Mr. Doucet was again seen in Mercy's emergency room.[15]  He had reportedly awakened with moderate tenderness to his right trapezius.

---

[10]     Rec. Doc. 13-1 at 150, 209, 217.

[11]     Rec. Doc. 13-1 at 150.

[12]     Rec. Doc. 13-1 at 133.

[13]     Rec. Doc. 13-1 at 130.

[14]     Rec. Doc. 13-1 at 306-308, 316-322.

[15]     Rec. Doc. 13-1 at 298-305.

A decreased range of motion was observed, and he was diagnosed with an acute myofascial strain.   He was given a Toradol injection and discharged with prescriptions for Flexeril, Prednisone, and Tramadol.

Mr. Doucet returned to Mercy's emergency room on May 29, 2016.[16]  He complained of moderate pain to the instep of his right foot, but he was able to walk and could fully bear weight.  He stated that the symptoms had started seven weeks earlier, were alleviated by elevation of his leg, and were aggravated by movement and weight bearing.  His foot was tender and discolored.  Ankle x-rays showed no acute osseous abnormality but mild to moderate dorsal hypertrophic changes of the tarsal bones and slight soft tissue swelling medially and anterior to the tibiotalar joint.  His blood pressure was elevated, and he was given Clonidine.  He was also given Ibuprofen.  The doctor's impressions were sprain of an unspecified ligament of the right ankle and hypertensive heart disease.  Naproxen was prescribed.

On May 30, 2016,[17] the claimant was seen in the emergency room at Opelousas General Hospital in Opelousas, Louisiana.  His right foot was painful and swollen, reportedly due to an ice chest falling on his foot about two weeks earlier. He stated that he had been taking Naproxen with minimal relief.  He was able to walk with no difficulty and was able to bear weight on his foot.  He was diagnosed

---

[16]       Rec. Doc. 13-1 at 309-315.

[17]       Rec. Doc. 13-1 at 362-371.

with a mild to moderate sprain/strain of the foot.  He was given prescriptions for Tramadol and Ibuprofen.  He was discharged and advised to follow up with his primary care physician.

Mr. Doucet returned to the Opelousas General emergency room two days later, on June 1, 2016, by ambulance.[18]  His chief complaint was right ankle pain. He reported that he had been injured while lifting an ice chest approximately a week earlier.  Pain and swelling were noted.  It was also noted that the claimant is flat-footed and was moderately tender to palpation over the right medial malleolus (the bony prominence on the side of the ankle).  He was prescribed Naproxen and diagnosed with a soft tissue injury to his right foot.

Mr. Doucet returned to Opelousas General's emergency room on June 19, 2016 by ambulance,[19] complaining that he had experienced right ankle pain for about three weeks with multiple visits to the emergency room and his primary care physician but no orthopedic consultation.  He thought he might have a ligament or muscle tear.  He also reported that his ankle pain had increased that night along with chest pain and shortness of breath, which had resolved.  Examination showed a full range of motion in all extremities, pitting edema, intact distal pulses, normal capillary refill, no tight compartments, normal skin color, no rash, and calf

---

[18]    Rec. Doc. 13-1 at 346-359, 519-527.

[19]    Rec. Doc. 13-1 at 326-343, 495-518.

tenderness. He was given a hydrocodone-acetaminophen tablet, an injection of Meperidine for pain, and an injection of Phenergan. An ankle x-ray showed soft tissue swelling but no fracture or dislocation and an ultrasound of his leg showed no evidence of deep vein thrombosis. He was given a prescription for Ultram and discharged with instructions to follow up with his primary care physician.

On September 22, 2016, Mr. Doucet underwent Doppler ultrasound of his right calf at Mercy Regional Medical Center due to swelling in his right leg.[20] The ultrasound showed no evidence of deep venous thrombosis.

Mr. Doucet returned to Mercy on January 23, 2017 due to a contusion of his left hand.[21] X-rays of his hand showed an elongated minimally comminuted nondisplaced fracture of the mid to distal diaphysis of the fifth metacarpal.

On February 13, 2017, Mr. Doucet was again seen at Mercy, this time for a contusion or strain of the right shoulder.[22] X-rays showed no bony abnormalities.

Four days later, Mr. Doucet was seen in the emergency department at Opelousas General, complaining about pain in his right shoulder that he attributed to a fall about two days earlier.[23] He also complained of pain in his left shoulder,

---

[20]     Rec. Doc. 13-1 at 445-451.

[21]     Rec. Doc. 13-1 at 452-458.

[22]     Rec. Doc. 13-1 at 459-466.

[23]     Rec. Doc. 13-1 at 482-494.

and discoloration of the skin over the left shoulder was noted. The examining physician noted a contusion type of injury to both shoulders, both of which were moderately tender to palpation but without swelling or abrasions. X-rays of Mr. Doucet's right shoulder showed minimal AC joint degenerative changes. He was given a hydrocodone-acetaminophen tablet, prescribed Flexeril and Lortab, and instructed to follow up with his primary care physician.

Mr. Doucet was seen in the emergency department at Mercy on March 13, 2017 with complaints of right shoulder pain and right ankle pain that resulted from fighting with the police who brought him to the hospital.[24] It was noted that "at their worst the symptoms were very mild." A contusion was noted on the anterior aspect of the right shoulder and a small abrasion was noted on his right ankle, but he had a full range of motion. He was given an injection of Ativan, which reduced his anxiety; he was given a Norvasc tablet, which lowered his blood pressure; and he was given a Toradol tablet, which reduced his pain. It was noted that Mr. Doucet "has no functional deficits." He was released to the custody of law enforcement.

Almost exactly a month later, Mr. Doucet was again seen at Mercy.[25] He complained that he had injured his right ankle two days earlier when he stepped in a hole. But he also reported that he had injured his right shoulder and ankle in an

---

[24]    Rec. Doc. 13-1 at 377-392, 467-472.

[25]    Rec. Doc. 13-1 at 393-416.

7

altercation that had occurred two days earlier. Swelling of the ankle was observed, but he was able to fully bear weight on his right leg. He also complained about chronic right shoulder pain for which he had seen an orthopedist. His right shoulder displayed a painful range of motion, while his right ankle displayed a painful range of motion, swelling, and tenderness. He became aggressive during the examination and initially refused an ankle x-ray. Following further discussion with the emergency room doctor, he agreed to the ankle x-ray, which showed no significant abnormalities. The diagnoses were sprain of an unspecified ligament of the right ankle and right shoulder pain. He was given Tylenol, prescribed Mobic, and advised to follow up with his primary care physician.

A right shoulder MRI at Mercy on May 9, 2017 showed an irregular full-thickness tear of the supraspinatus tendon, generalized rotator cuff tendinopathy, a bone contusion of the posterior superior lateral humeral head, and moderate degenerative disease of the acromioclavicular joint.[26] It was noted that these findings might contribute to subacromial impingement syndrome, and that there was a grade 2 acromioclavicular joint separation.

Mr. Doucet was treated for a spider bite in the emergency room at Mercy on May 13, 2017.[27]

---

[26]     Rec. Doc. 13-1 at 417-424.

[27]     Rec. Doc. 13-1 at 425-444.

On June 9, 2017, Mr. Doucet returned to Mercy's emergency room after sustaining a facial injury in a fight.[28]  He had moderate ecchymosis or discoloration around his right eye as well as moderate swelling of the right eye and cheek.  His blood pressure was also elevated.  X-rays of his face showed no facial fractures, and his vision was not impacted.  He was given Tylenol, advised to ice his contusions, and given a prescription for Mobic.

On August 7, 2017[29] and again on August 27, 2017,[30] he sought treatment for a skin rash at Mercy's emergency room.  He also reported intermittent pain in his right shoulder and right ankle from previous injuries.

Mr. Doucet arrived by ambulance at the emergency room of Opelousas General Health System on September 2, 2017, complaining of chronic right shoulder pain.[31]  It was noted that his pain level was moderate.  X-rays of his right shoulder showed a slight widening of the AC joint suggestive of a mild right AC sprain.  He was given an injection of Toradol and prescribed Ultram and Naprosyn.  A sling was applied.  The diagnoses were right shoulder pain and arthritis.

---

[28]     Rec. Doc. 13-1 at 562-567.

[29]     Rec. Doc. 13-1 at 568-571.

[30]     Rec. Doc. 13-1 at 572-576.

[31]     Rec. Doc. 13-1 at 542-548.

Mr. Doucet saw his primary care physician, Dr. Charles Fontenot of Ville Platte, Louisiana, on several occasions between July 2016 and August 2017. Dr. Fontenot's records are handwritten and difficult to read. On July 21, 2016,[32] Mr. Doucet complained of right ankle pain, and slight edema was observed. He was diagnosed with soft tissue swelling and musculoskeletal strain of the right ankle, hypertension, obesity, and cough. He complained of right ankle pain and left shoulder pain on August 16, 2016, and again on September 22, 2016 when he was treated for abrasions after having gotten in a fight.[33] He again complained of left shoulder pain and right ankle pain on October 11, 2016 and November 14, 2016.[34] These complaints continued on December 28, 2016, when he was diagnosed with muscle spasms, hyperlipidemia, hypertension, obesity, and bronchitis, and on January 23, 2017, when he had a contusion due to a barbecue pit lid having falling on his left hand.[35] On February 13, 2017,[36] he again complained of left shoulder pain, left hand pain, right shoulder pain, right ankle pain, coughing, and muscle spasms. It was noted that his right shoulder pain resulted from his having fallen

---

[32]    Rec. Doc. 13-1 at 538-539.

[33]    Rec. Doc. 13-1 at 536.

[34]    Rec. Doc. 13-1 at 535.

[35]    Rec. Doc. 13-1 at 534.

[36]    Rec. Doc. 13-1 at 533.

against a wall. He again complained of right ankle pain, right shoulder pain, and left shoulder pain on February 27, 2017.[37] Similar complaints were reiterated on March 27, 2017, April 19, 2017, May 3, 2017, and May 24, 2017.[38] He was referred to an orthopedist for his right shoulder. Mr. Doucet continued to complain about right ankle pain and right shoulder pain on June 20, 2017, July 18, 2017, August 21, 2017, and September 21, 2017.[39]

On September 25, 2017, the claimant testified at a hearing regarding his symptoms, his medical treatment, and his functionality.[40] He was not represented, and he expressly waived his right to representation, both orally and in writing. He stated that he was six feet one inch tall, weighed approximately 312 pounds, and was right-handed. He stated that his driver's license was suspended, and he was going through a divorce. He confirmed that his primary occupation was welding and fabricating but that he also did some barbering.

Mr. Doucet stated that he had torn ligaments in his right ankle that caused intermittent swelling, making it difficult for him to walk. He testified that he could stand up for about an hour before needing to sit down and rest for about thirty

---

[37]     Rec. Doc. 13-1 at 533.

[38]     Rec. Doc. 13-1 at 531-532.

[39]     Rec. Doc. 13-1 at 529-530.

[40]     Rec. Doc. 13-1 at 103-147.

minutes.  He testified that he had surgery on his left shoulder for a dislocated rotator cuff and an abscess in 2015.  He also testified that he could not lift anything higher than shoulder height with his right arm due to a tear in his right shoulder.  He stated that Dr. Fontenot gave him medication for his right shoulder.  He said he had been referred to an orthopedic surgeon but had not yet seen one.  He estimated that he could lift ten to twenty pounds with his right arm, complained of pain in his right shoulder, and denied any problems with his hands or fingers.

He complained that bronchitis kept him congested but did not prevent him from working.  He stated that he had high blood pressure, which was worsened by the heat.  However, he testified that it was only his right ankle and right shoulder that prevented him from returning to work.

Mr. Doucet testified that he could dress himself and maintain proper hygiene. He stated that he did light cooking "off and on" and did very light housekeeping chores.  He denied doing any yard or garden work and stated that family members assisted him with outside chores.  In describing a typical day, Mr. Doucet stated that he tried to stay busy by visiting with his father and brother, exercising, and doing a little work in the yard.  He also stated that he cut hair Thursday to Saturday approximately one to two hours per day to make approximately $60 to $70 per week, but his shoulder pain prevented him from doing more.  He testified that he stopped working on December 31, 2014 due to pain in his left shoulder.

12

After the hearing, the claimant submitted additional treatment notes to the Appeals Council, all of which had to do with medical services rendered after the ALJ issued her ruling on May 2, 2018.[41]  The Appeals Council found that the additional medical evidence did not relate to the period at issue and consequently did not affect the decision about whether Mr. Doucet was disabled before the ALJ's decision was rendered.[42]  The additional evidence need not be summarized here.

The claimant now seeks reversal of the Commissioner's adverse ruling.

## **Analysis**

### A.    **Standard of Review**

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether proper legal standards were used in evaluating the evidence.[43]  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[44]  Substantial evidence "must do more than create a suspicion of the existence of the fact to be

---

[41]     Rec. Doc. 13-1 at 10-74, 77-85.

[42]     Rec. Doc. 13-1 at 5.

[43]     *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

[44]     *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[45]

If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed.[46]  In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner.[47]  Conflicts in the evidence[48] and credibility assessments[49] are for the Commissioner to resolve, not courts.  Four elements of proof are weighed by courts in determining if substantial evidence supports the Commissioner's determination:  (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[50]

---

[45]    *Hames v. Heckler*, 707 F.2d at 164 (citations omitted).

[46]    42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d at 173.

[47]    *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1022.

[48]    *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985).

[49]    *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991).

[50]    *Wren v. Sullivan*, 925 F.2d at 126.

B.    <u>**Entitlement to Benefits**</u>

The Disability Insurance Benefit program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[51]  A person is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[52] A claimant is disabled only if his physical or mental impairments are so severe that he is unable to not only do his previous work, but cannot, considering his age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work.[53]

C.    <u>**Evaluation Process and Burden of Proof**</u>

A sequential five-step inquiry is used to determine whether a claimant is disabled.  The Commissioner must determine whether the claimant (1) is currently working; (2) has a severe impairment; (3) has an impairment listed in or medically

---

[51]      See 42 U.S.C. § 423(a).  See, also, *Smith v. Berryhill*, 139 S.Ct. 1865, 1772 (2019).

[52]      42 U.S.C. § 1382c(a)(3)(A).

[53]      42 U.S.C. § 1382c(a)(3)(B).

equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is able to do the kind of work he did in the past; and (5) can perform any other work.[54]

Before going from step three to step four, the Commissioner evaluates the claimant's residual functional capacity[55] by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the record.[56]  The claimant's residual functional capacity is used at the fourth step to determine if he can still do his past relevant work and at the fifth step to determine whether he can adjust to any other type of work.[57]

The claimant bears the burden of proof on the first four steps; at the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy.[58]  This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence.[59]  If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to

---

[54]    20 C.F.R. § 404.1520.

[55]    20 C.F.R. § 404.1520(a)(4).

[56]    20 C.F.R. § 404.1545(a)(1).

[57]    20 C.F.R. § 404.1520(e).

[58]    *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016); *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).

[59]    *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

rebut this finding.[60]  If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends.[61]

### D.    <u>The ALJ's Findings and Conclusions</u>

In this case, the ALJ determined, at step one, that the claimant has not engaged in substantial gainful activity since December 31, 2014.[62]  That finding is supported by substantial evidence in the record.

At step two, the ALJ found that the claimant has the following severe impairments:  right shoulder degenerative joint disease, mild to moderate dorsal hypertrophic changes of the right ankle, hypertension, and obesity.[63]  That finding is supported by substantial evidence in the record.

At step three, the ALJ found that the claimant has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment.[64]  The claimant did not challenge that finding.

The ALJ found that the claimant has the residual functional capacity to perform sedentary work except that he can only occasionally reach overhead with

---

[60]    *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Fraga v. Bowen*, 810 F.2d at 1302.

[61]    *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 914 U.S. 1120 (1995) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

[62]    Rec. Doc. 13-1 at 92.

[63]    Rec. Doc. 13-1 at 92.

[64]    Rec. Doc. 13-1 at 92.

his right arm, must have no exposure to extreme heat, and must be permitted to shift or alternate positions every thirty minutes for a duration of one to two minutes while remaining at his workstation and with no change in the work process.[65]  The claimant challenged this finding.

At step four, the ALJ found that the claimant is not capable of performing any past relevant work.[66]  The claimant did not challenge that finding.

At step five, the ALJ found that the claimant was not disabled from December 31, 2014 through May 2, 2018 (the date of the decision) because there are jobs in the national economy that she can perform.[67]  The claimant challenged this finding.

## E.   The Allegations of Error

The claimant is not represented by counsel in this matter.  In such a situation, the court must liberally construe the claimant's allegations and arguments.[68]  As liberally construed, Mr. Doucet argued that the ALJ erred in evaluating his residual

---

[65]    Rec. Doc. 13-1 at 93.

[66]    Rec. Doc. 13-1 at 97.

[67]    Rec. Doc. 13-1 at 98.

[68]    See, e.g., *Conley-Clinton v. Saul*, 787 Fed. App'x 214, 217 n. 2 (5th Cir. 2019); *Stringer v. Astrue*, 465 Fed. App'x 361, 364 (5th Cir. 2012); *McKenzie v. Astrue*, 442 Fed. App'x 161, 164 n. 1 (5th Cir. 2011) (citing *SEC v. AMX, Int'l, Inc.*, 7 F.3d 71, 75 (5th Cir. 1993)); *Johnson v. Astrue*, 291 Fed. App'x 582, 585 (5th Cir. 2008); *Harris v. Barnhart*, 204 Fed. App'x 447, 448 (5th Cir. 2006); *Rowland v. Barnhart*, 193 Fed. App's 323, 323 (5th Cir. 2006) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)); *Kinchen v. Department of Health & Human Services*, 46 F.3d 65, 65 (5th Cir. 1995).

functional capacity by failing to properly assess the impact of his impairments on his functionality.

**F.    The ALJ Properly Evaluated Mr. Doucet's Residual Functional Capacity**

While the ALJ found that Mr. Doucet retains the ability to perform sedentary work with certain exceptions, Mr. Doucet contends to the contrary that he is incapable of functioning at that level; consequently, he contends that the ALJ improperly evaluated his residual functional capacity.  A person's residual functional capacity is the most he can do despite his limitations or restrictions.[69]  The responsibility for determining a claimant's residual functional capacity is reserved to the Commissioner.[70]  In making that determination, the ALJ is required to evaluate the claimant's functional limitations, explain how the evidence supports his conclusions about those limitations, and discuss the claimant's ability to perform sustained work activities on a regular and continuing basis.[71] In this case, the ALJ's ruling included a detailed analysis of the claimant's residual functional capacity with citations to the record evidence supporting her conclusions in that regard.

The claimant's treatment history shows that he has right shoulder abnormalities documented by x-ray and MRI examinations as well as numerous

---

[69]    SSR 96-8p, 1996 WL 374184, at *1.

[70]    *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).

[71]    SSR 96-8p, 1996 WL 374184, at *1.

reports of right foot or ankle issues, often related to injuries but appearing to have become a chronic condition. Still, the record contains numerous observations that Mr. Doucet was able to ambulate normally and to bear full weight on his right ankle even when complaining that his ankle was painful. His pain complaints were typically mild or moderate. Despite the claimant's hearing testimony, the treatment notes contain no confirmation or documentation of a ligament tear in his right ankle.

In evaluating the claimant's residual functional capacity, the ALJ took into account Mr. Doucet's right shoulder impairment and limited him to no overhead lifting with the right arm, consistent with his hearing testimony that he was unable to lift his right arm above shoulder height. The ALJ also limited him to sedentary work that allowed him to shift positions, consistent with his hearing testimony that he could not stand or walk for extended periods of time. Thus, in evaluating Mr. Doucet's residual functional capacity, the ALJ accommodated the impairments that Mr. Doucet claimed at the hearing. More important, the medical records do not document any greater degree of physical limitation in Mr. Doucet's ability to stand, walk, or use his right arm.

In his briefing, Mr. Doucet argued that he is "suffering from severe and uncontrollable diabetes, pancreatitis, blurry vision, memory loss, delayed motor response, high blood pressure, joint swelling and stiffness, fluid retention, and rotary

cuff damage" as well as being "very depressed and anti-social."[72]  Assuming that the term "rotary cuff damage" refers to the documented right shoulder impairment, the ALJ took that into consideration when evaluating Mr. Doucet's functional capacity. The ALJ also considered Mr. Doucet's hypertension and found it to be a severe impairment.  But there is no evidence in the record that the claimant's hypertension was uncontrolled by medication or rendered him incapable of performing sedentary work.  To the contrary, on two separate occasions, Mr. Doucet presented at the emergency room with high blood pressure that was immediately treated and reduced to a level that made it possible for him to be discharged home with no restrictions on his activities.  Furthermore, the ALJ accommodated Mr. Doucet's hypertension in her residual functional capacity finding by restricting him to jobs that did not require him to be exposed to extreme heat.

The other conditions claimed by Mr. Doucet to be disabling in his recent briefing were not documented in the treatment notes contained in the record.  His claim that he is disabled due to uncontrollable diabetes, pancreatitis, blurry vision, memory loss, delayed motor response, depression, or anti-social feelings is inconsistent with his treatment records for the time period addressed in the ALJ's decision, inconsistent with his application for disability benefits, and inconsistent

---

[72]        Rec. Doc. 14.

with his testimony at the hearing. The record contains no diagnoses of these conditions, no complaints by Mr. Doucet that he had these conditions, and no clinical findings regarding these conditions. Therefore, the ALJ did not err in failing to consider the effect of these conditions on Mr. Doucet's functionality.

This Court finds that the ALJ properly evaluated the claimant's residual functional capacity based on the evidence of record through the time of the decision, and further finds that the ALJ's findings were supported by substantial evidence of record.

The claimant submitted to the Appeals Council medical records related to treatment that he received after the ALJ's May 2, 2018 decision. The Appeals Council noted that this evidence did not relate to the time period addressed in the ALJ's decision and therefore found that the new evidence did not necessitate review of the ALJ's decision.[73] This was a correct decision since review based on the submission of additional evidence to the Appeals Council is permitted only when the evidence is new, material, relates to the period on or before the ALJ's decision, and creates a reasonable probability that it would result in a different decision.[74]

---

[73]   Rec. Doc. 13-1 at 5.

[74]   20 C.F.R. § 404.970(a)(5).

Perhaps this evidence would support a new application for disability benefits, but it is irrelevant to the matter currently under consideration.

At step five of the sequential analysis, the Commissioner had the burden of showing that there were a substantial number of jobs in the national economy that the claimant could perform.  The testimony of the vocational expert at the hearing to the effect that there were sedentary jobs that Mr. Doucet could perform given the restrictions necessitated by his hypertension, right shoulder impairment, and right ankle impairment satisfied this burden.  Accordingly, the ALJ's finding that Mr. Doucet was not disabled was supported by substantial evidence of record.

## Conclusion and Recommendation

For the foregoing reasons, this Court recommends that the decision of the Commissioner should be AFFIRMED and that this matter should be dismissed with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.[75]

Signed in Lafayette, Louisiana, this 23rd day of June 2020.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE

---

[75]    See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1).